(Superior Court of Cincinnati.)
Special Term, August, 1898.

## RIGGS v. CINCINNATI WAITERS ALLIANCE LOCAL 58 et al.

Where the real gravamen of a petition is that libelous placards are being maliciously displayed in the street in front of the plaintiff's place of business with intent to injure the business, an injunction against such use of the street will not lie. An injunction can only issue when the consequences from the direct act complained of are such as to impede and obstruct the use of the street, and the plaintiff can show that certain special damage results to him therefrom, which differs in degree from that suffered by the public in general.

Heard on demurrer to petition.

DEMPSEY, J.

The substance of plaintiff's petition is that defendants have conspired to ruin her business (1), by circulating malicious libels about said business, and (2), by unlawfully interfering with plaintiff's customers and the conduct of her business.

In elaboration of these charges the petition avers (1), that defendants have published and circulated, and are publishing and circulating certain hand bills in which plaintiff's restaurant is stigmatized as being on the "unfair list," and by which the public are requested to refrain from patronizing plaintiff; (2), that defendants daily stand in front of and near said restaurant and pass such hand bills to customers of plaintiff to induce them to refrain from patronizing plaintiff, and that customers are thereby induced to cease patronizing plaintiff, and (3), that defendants have had constructed a number of large placards on which is printed the following language: "Do not patronize the Manhattan restaurant, 17 West Fifth street. It is unfair to unionists. Indorsed by Central Labor Council and Building Trades Council. By order Cincinnati Waiters Alliance Local 58," and that defendants are carrying and causing to be carried these placards daily along Fifth street in front of said restaurant, and at times stopping in front thereof, for the purpose of inducing people not to patronize plaintiff, and for the purpose of annoying her and interfering with her customers.

Plaintiff further alleges that the charges contained in said circulars and placards are false, and that the motive for their circulation is to force plaintiff to conduct her business, hire her employes and schedule her wages to employes according to defendants' dictation, and in submission to them.

There are no other specific averments as to unlawfully interfering with plaintiff's customers and the conduct of her business except the general averment "that the conduct of defendants is a continuing nuisance and a malicious libel, and an unlawful injury and annoyance to this plaintiff."

The petition then makes the usual averments of irreparable loss and damages etc., and prays for an injunction.

Defendants demur generally. The contention between counsel at the argument resolved itself into two propositions—the plaintiff contending that the defendants' use of the public streets in and about her restaurant for the purpose undertaken by them was a public nuisance, resulting in special damage to her, for which she is entitled, other necessary elements being present, to an injunction; while the defendants contend that the true burden of plaintiff's complaint is the alleged libelous matter contained in the circulars and placards distributed and paraded by defendants, and that there are no facts pleaded in the petition which bring the use of the streets by defendants within the definition of a nuisance. The contention resolves itself into a construction of the petition, and after careful consideration and many readings of the petition, I have come to the conclusion that defendants are right.

The streets are public highways, and the primary use of a highway is for the purpose of passage and transit only. "The use by every citizen of public ways must be use appropriate to the purposes for which they are intended—that is, of transit—with such stoppage as business necessity, accident or the ordinary exigencies of travel either in vehicles or on foot may require." (Norristown v. Mayor, 67 Pa St., 355). And in this case it was held that loungers while lounging, not using the streets for purposes of passage, were obstructions in the public right of way, and therefore were nuisances. But this opinion was modified in a later case (Fairbanks v. Kerr, 70 Pa. St., 86,) where it is held that lounging or public speaking and things of that nature are not nuisances per se, but that they may become so by causing an obstruction of the public highway. (See Wood on Nuisances, 3d Ed., sec. 264.)

And it seems to be a settled rule that from the direct act complained of there must ensue certain consequences or results which destroy the main purpose and use of the public highway, viz., that of passage to and from, and cause the same to be impeded and obstructed.

But this would be a public nuisance, and to entitle a complainant to seek a personal remedy therefor either by injunction or in damages, he must show that certain special damage, different in degree from that sustained by the public, is suffered by him. Now, there is not an averment in the petition that alleges that any act or conduct of the defendants results in an obstruction of the streets in the neighborhood of plaintiff's restaurant, nor is there a single averment that couples the injury and inconvenience complained of by plaintiff with the use of the streets made by defendants. The real gravamen of plaintiff's complaint is the circulars and the legends printed upon

the placards. Plaintiff claims they are untrue and they are being spread broadcast maliciously; that they are in fact malicious libels and are being spread abroad to injure plaintiff in her business and do injure and annoy her in her business. But equity will not interfere by injunction to restrain the publication or circulation of a libel. "It is the rights of property or rather rights in property, that equity interferes to protect; a party is not entitled to a writ of injunction for a matter affecting his person." "And this rule is now carried to the extent of holding that where the gist of the injury is purely personal (as for instance in cases of libel), the fact that it may be injurious to property does not give the court jurisdiction." See Bispham on Equity, 4th Ed., sec. 465, note 4, and cases cited. And it may not be out of place here to remark that the case of Springhead Spinning Co. v. Riley, L. R., 6 Eq., 551, which has been considered the leading English authority sustaining the power of equity to grant injunctions against libels, has been repudiated and overruled in Prudential Assurance Co. v. Knott, L. R., 10 Ch., 142.

In the United States the power would seem necessarily to be absolutely wanting in view of the uniform constitutional provisions regarding the freedom of speech and the liberty of the press, whereby it is guaranteed to every citizen that he may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of the right and that no law shall be passed to abridge the liberty of speech and of the press. The courts are not higher than the organic laws of the land, and when that confers a right, it is beyond the power of the courts to deny, abridge, or restrain the exercise of the right. Abuse of the right may be punished criminally, or by civil suit for damages; but the constitution, from motives of public safety, and to prevent the forcible suppression of grievances, has wisely provided, by implication at least, that the abuse of the right shall not be anticipated by the courts and enjoined.

The demurrer to the petition will be sustained.

W. W. Prather and Wm. Hartley Pugh, for plaintiff.

H. M. Rulison, Jr., and F. W. Cottle, for defendants.